IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


JESSIE L. HENDRIX,
      Plaintiff,

vs.                                                      Case No.: 3:15cv54/RV/EMT

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,
      Defendant.
_____/

## REPORT AND RECOMMENDATION

      This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court pertaining to review of administrative determinations under the Social Security Act ("the Act") and related statutes, 42 U.S.C. § 401, *et seq*.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Act for review of a final determination of the Commissioner of the Social Security Administration ("the Commissioner of the SSA") denying Plaintiff's request for waiver of recovery of an overpayment in disability insurance benefits ("DIB") paid under Title II of the Act, 42 U.S.C. §§ 401–34.

      Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence and comport with proper legal principles.  It is therefore recommended that the decision of the Commissioner be affirmed.

## I.    PROCEDURAL HISTORY

In January 2007 Plaintiff was granted DIB for himself and on behalf of his minor daughter (tr. 15).  On October 29, 2011, the SSA informed Plaintiff that he had been overpaid $75,863[1] in DIB, that the SSA had suspended his benefits for the period June 2008 through February 2011, and that the SSA had terminated his benefits effective March 2011 (tr. 56).  The SSA later determined that Plaintiff also received an overpayment of $37,925 in auxiliary benefits for his daughter during the same period, for a total overpayment of $113,788 (*see* tr. 5, 15, 60, 71[2]).  Plaintiff requested waiver of recovery of the overpayment of $113,788 (tr. 60–67), which was denied both initially (tr. 71–72) and after a personal  conference (tr. 77–80).  Plaintiff then requested a hearing before an administrative law judge ("ALJ") (tr. 81–82).  The ALJ conducted a hearing on January 7, 2013, at which Plaintiff, representing himself, appeared and testified (tr. 164–99).  On June 19, 2013, the ALJ issued a decision denying Plaintiff's request for waiver of recovery of the overpayment (tr. 13–17), and on December 15, 2014, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (tr. 4–8).  Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007).  This appeal, filed by Plaintiff pro se, followed.[3]

## II.    FINDINGS OF THE ALJ

In his June 19, 2013, decision, the ALJ made the following findings (tr. 13–17):

1)    Plaintiff and his dependent child were overpaid benefits in the amount of $113,788 during the period June 2008 to February 2011.

2)    Plaintiff is at fault in causing the overpayment(s) at issue.

---

[1] The actual amount was $75,863.20 but the Commissioner now refers to the amount due as $75,863.

[2]  The court could not locate a specific document in the administrative file in which Plaintiff was notified of the overpayment of $37,925, and it appears the Commissioner could not locate it either (*see* doc. 12 at 4 n.3).

[3]  The court's April 27, 2015, Scheduling Order acknowledged Plaintiff's pro se status, noting that it was required to construe pro se pleadings liberally and hold them to a less stringent standard than pleadings drafted by attorneys (doc. 10 at 1).  The court further informed Plaintiff that such liberal construction did not require that deficient pro se pleadings be rewritten by the court and that pro se litigants must follow all procedural rules (doc. 10 at 1, citing Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003) and GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998)).

3)      "Recovery of the overpayment is not waived, and [Plaintiff] is liable for repayment of $133,788 during the period June 2008 to February 2011 (20 CFR 404.506)."

## III.    STANDARD OF REVIEW

Judicial review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether proper legal standards were applied.  *See* <u>Lewis v. Callahan</u>, 125 F.3d 1436 (11th Cir. 1997).  Supporting evidence need not be preponderant to be substantial so long as it amounts to more than a scintilla; in other words, it is such relevant evidence that a reasonable person might accept as adequate to support the conclusion reached.  *See id.* at 1440. If the decision is supported by substantial competent evidence from the record as a whole, a court will not disturb that decision.  Neither may a court reweigh the evidence nor substitute its judgment for that of the ALJ.  *See* <u>Wolfe v. Chater</u>, 86 F.3d 1072 (11th Cir. 1996); *see also* <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1221 (11th Cir. 2002).  This "substantial evidence" standard of review applies equally to overpayment and waiver determinations.  *See* <u>Viehman v. Schweiker</u>, 679 F.2d 223, 227 (11th Cir. 1982).

In a case such as this, where the Commissioner has determined that an overpayment has been made, the Commissioner shall:  (1) require such overpaid person to refund the amount in excess of the correct amount; or (2) "decrease any payment . . . payable to his estate or to any other person on the basis of the wages and self-employment income which were the basis of the payments to such overpaid person"; or (3) obtain recovery by means of reduction in tax refunds; or (4) apply any combination of the foregoing.  42 U.S.C. § 404(a)(1)(A).  However, "there shall be no adjustment of payments to, or recovery by the United States from, any person who is *without fault* if such adjustment or recovery would defeat the purpose of [Title II] or would be against equity and good conscience."  42 U.S.C. § 404(b) (emphasis added).

In considering whether an overpaid person is at fault, the Commissioner should take into account any physical, mental, educational, or linguistic limitation the overpaid individual may have, *id.*, as well as his age.  20 C.F.R. § 404.507.  Fault may be found in instances where, for example, the overpaid individual made an incorrect statement he knew or should have known to be incorrect, failed to furnish information he knew or should have known to be material, or accepted a payment which he either knew or could have been expected to know was incorrect.  *See id.*  Conversely, the

SSA may find an individual to be without fault if he "accepts such overpayment because of reliance on erroneous information from an official source within the [SSA] . . . with respect to the interpretation of a pertinent provision of the [SSA] or regulations pertaining thereto . . . ." 20 C.F.R. § 404.510a.

Even if an individual is found to be without fault, however, waiver of overpayment can be granted only if recovery of the overpayment would either defeat the purpose of Title II or would be against equity and good conscience.  42 U.S.C. § 404(b); *see also* 20 C.F.R. § 404.506(a).  A recovery defeats the purpose of Title II if it "deprives a person of income required for ordinary and necessary living expenses."  20 C.F.R. § 404.508(a).  A recovery is against equity and good conscience if an individual "[c]hanged his position for the worse . . . or relinquished a valuable right . . . because of reliance upon a notice that a payment would be made or because of the overpayment itself . . . ."  20 C.F.R. § 404.509(a)(1).

## IV.    RELEVANT EVIDENCE OF RECORD

On June 19, 2013, the date of the ALJ's decision, Plaintiff was fifty-two years of age (tr. 55), with a high school education (tr. 189) and over twenty years working as a laundry supervisor for the Department of Justice at a federal prison (tr. 184).  Plaintiff stopped working in August 2006 after being diagnosed with multiple myeloma and suffering kidney failure (tr. 185–87).  In a letter dated June 16, 2007, sent to the SSA Office in Fort Walton Beach, Florida, Plaintiff informed the SSA that his health had improved and he had returned to work on a trial basis (tr. 107).

The SSA sent Plaintiff a Notice of Change in Benefits dated November 2, 2007, in which he was advised that his benefits were being increased to give him credit for additional earnings that were not included when his benefits had previously been calculated (tr. 148–49).  Plaintiff received similar Notices on November 7, 2008 (tr. 150–51), November 6, 2009 (tr. 152–53), and November 5, 2010 (tr. 154–55).

On February 17, 2011, Plaintiff submitted a Work Activity Report to the SSA which showed he worked for the U.S. Department of Justice from January to August 2006 and for the U.S. Army Reserve from May to June 2006, with both jobs ending by August 2006 (tr. 26).  Plaintiff also reported that he earned over $3,600 per month starting in June 2007 "and every month after" through 2010 (tr. 27, 29).  In a letter dated March 16, 2011, the SSA requested further information about the

work Plaintiff had reported (*see* doc. 6-2 at 6 [Bates stamp missing]–7 & tr. 159).  Attached to the letter is a Work and Earning Summary which reflects earnings for Plaintiff of approximately $42,608 in 2007; $56,424 in 2008; $57,649 in 2009; and $45,622 in 2010 (tr. 161).

A Social Security Disability Information statement dated March 30, 2011, informed Plaintiff that the evidence in his disability claim had been reviewed; the SSA found that Plaintiff's "disability was continuing"; and that the evidence showed he had "not worked in any trial work months" (tr. 162).[4]

On April 5, 2011, Plaintiff submitted a Work Activity Report virtually identical to his Report of February 17, 2011 (tr. 32–37).

In a Notice of Proposed Decision dated August 22, 2011, the SSA advised Plaintiff that it had information about his earnings that could affect his Social Security disability payments and provided him with an opportunity to submit additional information in response (tr. 40).  Plaintiff was informed that SSA records showed his nine-month trial work period—during which he could test his ability to work and still receive DIB—had been from June 2007 through February 2008 (tr. 41).  The Notice further stated that the SSA likely would decide that Plaintiff's disability had ended in March 2008, with additional benefits payable only for that month and the following two months (tr. 42), because he had performed substantial work and thus was not entitled to benefits for June 2008 forward (tr. 40).  On September 8, 2011, the SSA sent Plaintiff a Notice of Revised Decision stating that it had decided that his disability had ended in March 2008 and that he was not entitled to DIB payments as of June 2008 (tr. 44–46).

---

[4]  Although the Disability Information Statement appears to consist of more than one page, the administrative file provided to the court contains only the first page of the document.

V.      HEARING TESTIMONY[5]

At the January 7, 2013, administrative hearing Plaintiff testified that he stopped working in August 2006 when he became ill, returned to work in June 2007, and had been working full-time ever since (tr. 185–87).   Plaintiff also testified that he submitted Work Activity Reports to the Baltimore, Maryland, Social Security Office every year from 2008 through 2011, along with a photocopy of his June 2007 return-to-work letter, to advise the SSA he was working (tr. 171). According to Plaintiff, he submitted the Work Activity Reports in response to letters from the SSA stating their records showed additional earnings about which they required more information (tr. 172).   In addition to the letters from the SSA requesting more information, Plaintiff indicated he received letters from the SSA in 2008, 2009, and 2010 stating he continued to be eligible to receive DIB (tr. 172–73, 191).   The ALJ commented that he did not recall seeing such letters in the administrative file (tr. 173).   Plaintiff stated that he had copies of the eligibility letters, and he agreed to provide them to the SSA (*see* tr. 173–76; 191).

Plaintiff also testified that on December 21, 2010, he telephoned the Fort Walton Beach SSA Office and spoke with a representative named "John" (tr. 182–83).   Plaintiff stated he told John he was calling "in reference to [SSA instructions] about returning to work.   He [John] told [Plaintiff] that—something [like] to disregard the fact of the work; said to call only if something changed." (tr. 183).   In response to the ALJ's question regarding his state of mind when he became ill, Plaintiff indicated his concentration was not good (tr. 189).   Also, when asked by the ALJ whether he questioned his continued entitlement to DIB in light of his successful return to full-time work, Plaintiff replied, "No, sir.  Because the paper said something different." (tr. 191).

VI.     DISCUSSION

In his decision, the ALJ noted that he had kept the record open for several months after the administrative hearing to permit Plaintiff to supply copies of the Work Activity Reports which Plaintiff testified he had sent to the Baltimore, Maryland, Social Security Office (tr. 15).   On April

---

[5]   The transcript of the hearing reflects that the ALJ asked Plaintiff whether he understood he could obtain representation by counsel or other individual, to which Plaintiff responded, "Yes, I did.  I contacted my attorney, but he was going to charge $6,000 to be my representative" (tr. 169).  Plaintiff then explicitly waived the right to representation and elected to proceed pro se (*id.*).

20, 2013, Plaintiff responded to the ALJ's April 10, 2013, letter reminding Plaintiff to submit the documents (*id.*).  In his letter Plaintiff stated that "[f]rom 2008 thru 2011 the Baltimore SSA Office mailed me the enclosed Work Activity Report–Employee paperwork. . . .  I completed the forms, enclosed the return to work letter I mailed to the Ft. Walton Beach office on June 16, 2007, and mailed them back.  Each year they mailed me back stating 'your disability is continuing.'" (tr. 133). Plaintiff did not, however, enclose the "Work Activity Report–Employee paperwork" for 2008 through 2010 requested by the ALJ (tr. 15).[6]  The ALJ therefore deemed the evidentiary record reasonably complete and proceeded to evaluate Plaintiff's claim (tr. 15–16).

Plaintiff does not appear to challenge the ALJ's finding that he received an overpayment in the amount of $133,788, and the undisputed record contains substantial evidence that in fact Plaintiff did.  The ALJ found there was no evidence—following Plaintiff's June 2007, letter, until February and April 2011—that the SSA received any Work Activity Reports or other correspondence from Plaintiff concerning his work activities (tr. 16).[7]  Meanwhile, however, Plaintiff worked full-time, "earning well over the substantial gainful activity amount, and receiving disability benefits, resulting in the current large overpayment" (*id.*).  The ALJ found that the overpayment period began in June 2008 (after Plaintiff's trial work period and three months of additional payments had concluded) and continued through February 2011 (*id.*).

Plaintiff challenges the ALJ's finding that he was not without fault for the overpayment. Plaintiff contends that "[o]n a yearly basis I completed the paperwork informing [the SSA] I was working full time and my income[;] I also enclosed my return to work letter and mailed it back. Each year the SSA wrote me back informing me they decided I was still eligible and to continue my disability payment." (doc. 11 at 3).  In short, Plaintiff submits that he "was not at fault for any overpayment, the SSA approved my disability in 2007 and continued saying I was still entitled" (*id.* at 4).

---

[6]  The only attachments were a Work Activity Report for 2011, Plaintiff's notes regarding his December 21, 2010, conversation with "John," now identified as "Larry," and a copy of Plaintiff's June 16, 2007, return-to-work letter (tr. 133–47).

[7]  Plaintiff states in his memorandum that "[w]e are not sure, but since we could not locate the 2008 through 2010 paperwork we think we burned it in 2010" when disposing of some damaged items removed from a storage shed (doc. 11 at 2).

The ALJ noted Plaintiff's contention that he was not at fault for the overpayment because he notified the SSA when he returned to work in June 2007 and reported his earnings every year following (tr. 16).  The ALJ also referenced Plaintiff's testimony that he had copies of the Work Activity Reports he sent to the SSA in 2008, 2009, and 2010—which the administrative record did not include—but noted that Plaintiff  had failed to submit these documents into evidence (*id.*).  The ALJ noted that even if the SSA was at fault in originally making an overpayment, such fault did not relieve Plaintiff from liability for the continuing benefit overpayments.  Based on Plaintiff's June 2007 return-to-work letter, his testimony that he reported his work activity to the SSA each year, and various subjective criteria,[8] the ALJ found that Plaintiff knew his work activity affected his entitlement to benefits and that he accepted payments which he knew or should have known were incorrect (*id.*).  The ALJ discounted Plaintiff's testimony at the hearing that his concentration was poor during the applicable time period because, despite this alleged problem, Plaintiff was able to work full-time (tr. 17).  The ALJ also noted that although, as Plaintiff testified, Plaintiff received a Notice of Change of Benefits from the SSA from 2007 through 2010 that informed him that his benefits were being increased due to his prior year's earnings, it was

> quite unreasonable for [Plaintiff] to expect to continue earning essentially the same amount that he was earning before he began receiving disability benefits, while still continuing to work and receive disability benefits at the same time.  Moreover, there is no evidence in the record that [Plaintiff] attempted to contact [the SSA] after he received these statements other than reportedly making one telephone call to "John" in December 2010, more than three years after he went back to work. . . .  Under these circumstances, the undersigned [ALJ] cannot find that [Plaintiff] was without fault within the regulatory and statutory framework.

(tr. 17).

Substantial evidence supports the ALJ's findings.  As the ALJ determined, although Plaintiff contends he filed Work Activity Reports with the SSA for the years 2008, 2009, and 2010, the SSA has no record of any such Reports having been filed and Plaintiff failed to supply them.  Following Plaintiff's June 2007 return-to-work letter the first Work Activity Report of record from Plaintiff

---

[8] The ALJ stated that he considered such criteria as Plaintiff's intentions, state of mind, age, intelligence, education, and physical and mental condition (tr. 16, citing 20 C.F.R. § 404.507 and Jefferson v. Bowen, 794 F.2d 631, 633 (11th Cir. 1986)).

is dated February 17, 2011, and the only evidence that Plaintiff attempted to call the SSA about his benefits is reportedly a contact he made in December 2010, which was over three years after Plaintiff returned to work full-time in June 2007.  It matters not that the SSA may bear some responsibility for overpaying Plaintiff's DIB.  "Social Security law does not ask whether SSA is at fault.  Rather, in order for the Plaintiff to avoid having to return erroneously paid benefits, the burden is on him to show that he bears no fault."  Martinez v. Astrue, No. 10-80723-CIV, 2011 WL 679851, at *4 (S.D. Fla. Feb. 1, 2011); see also 20 C.F.R. § 404.507 ("Fault as used in without fault . . . applies only to the individual"; thus, even if the SSA was at fault in making an overpayment, that fact alone would not relieve the individual of liability for repayment) (emphases added).  Here, the evidence supports the ALJ's finding attributing fault to Plaintiff because—for nearly three years—Plaintiff accepted payments which he either knew or could have been expected to know were incorrect.  20 C.F.R. §§ 404.507(b), (c).   Plaintiff's June 2007 return-to-work letter and his testimony that he reported his work activities to the SSA each year evidence Plaintiff's awareness that work activities could affect his entitlement to disability benefits.  This conclusion is not altered by Plaintiff's testimony that he suffered from poor concentration at the time because, as the ALJ found, Plaintiff nevertheless was able to work full-time during the period at issue.  Moreover, even though Plaintiff received a Notice of Change of Benefits for 2007 through 2010 advising him of an increase in benefits, it was, as the ALJ concluded, unreasonable for Plaintiff to think he could work full-time and collect significant earnings for such full-time work while at the same time be deemed disabled and receive benefits.

Plaintiff's conduct falls short of the high degree of care generally expected by a DIB recipient.  See Martinez, 2011 WL 679851, at *3 (discussing "high degree of care" owed and finding that claimant should have known that continued receipt of DIB after he returned to work was where wrong where, among other circumstances, there was no allegation of any sort of impediment that would have hindered his understanding of his obligations); 20 C.F.R. § 404.1588 (stating that a person receiving DIB is required to report to the SSA any event that may change his disability status).  Plaintiff simply has not met his burden of demonstrating that he bears no fault for the overpayments he received from June 2008 to February 2011.  Accordingly, there is substantial evidence to support the ALJ's finding that Plaintiff was at fault for such overpayments.

The ALJ also concluded that because Plaintiff was at fault in accepting the overpayment, recovery of the overpayment was not waived and Plaintiff was liable for repayment of $133,788 for the period June 2008 to February 2011 (tr. 17).  Plaintiff challenges this finding, apparently contending that, in light of his financial circumstances, it would be inequitable for the SSA to recover the overpayment (doc. 11 at 3–4).

The Act allows for a waiver of an overpayment if the individual is *without fault* in causing the overpayment and recovering the overpayment would defeat the purposes of the Act or would be against equity and good conscience.  *See* 20 C.F.R. § 404.506(a); 42 U.S.C. § 404(b); <u>Davis v. Bowen</u>, 840 F.2d 822, 824 (11th Cir. 1988).  Thus, the court need not consider whether recovery would defeat the purpose of the Act or be against equity or good conscience because Plaintiff is not without fault.  Similarly, while a claimant's finances are considered in determining whether recoupment would defeat the purposes of the Act, *see* 20 C.F.R. § 404.508, the inquiry is made only if a claimant is without fault.  *See, e.g.,* 20 C.F.R. § 404.506(a).  Accordingly, whether Plaintiff can afford to repay or not is irrelevant to the required inquiry.

VII.   CONCLUSION

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed.  42 U.S.C. § 405(g); <u>Lewis</u>, 125 F. 3d at 1439; <u>Foote</u>, 67 F.3d at 1560.  Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 2nd day of October 2015.


                              s/ *Elizabeth M. Timothy*
                              **ELIZABETH M. TIMOTHY**
                              **CHIEF UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

        **Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.